## H. & C. NEWMAN v. BANK OF GREENVILLE ET AL.

1. TRUST-DEED TO SECURE NOTE AND ACCOUNT.  *Assignment of note as collateral.*
   Where a debtor, under agreement to furnish his creditor with collateral for $2000, deposits with him notes to that amount, and among them a note for $250, endorsed in blank, and the trust-deed which secures it and also other sums to be advanced, the creditor receiving the collaterals does not thereby acquire any interest in the trust-deed beyond the amount of the $250 note; and after payment of the note he cannot as against a purchaser from the debtor of property embraced in the trust-deed claim the further security of the trust-deed to satisfy the balance remaining due by the debtor upon the $2000, to secure which the collaterals were given.

2. AGREEMENT OF ATTORNEYS.  *Will prevail over evidence.*
   In a controversy involving the issue whether certain cotton in controversy was a part of a crop grown on a certain place and shipped to defendant, an agreement in the record signed by attorneys on both sides, giving what purports to be a true exhibit of all the cotton so grown and shipped, will control, notwithstanding there is evidence tending to show that the cotton in controversy, which is omitted in the exhibit, was also part of such crop and shipment.

3. NOTICE.  *Status presumed to continue.  Service of writ.*
   Where one, who has for five or six days been in possession of cotton which is subject to a landlord's lien, sells it on the very day he is served with a writ enjoining the sale, in the absence of evidence to the contrary, it will be presumed that the writ was served before the sale, in accordance with the rule of evidence that a state of things once shown to exist (in this case possession) will be presumed to continue until a change is shown, or a different presumption arises.

Appeal and cross-appeal from the chancery court of Washington county.

Hon. W. R. Trigg, Chancellor.

The facts of this case may be found stated at length in the opinion of the court on the former appeal.  See *Newman* v. *Bank of Greenville*, 66 Miss. 325.

On the return of the mandate to the lower court, additional evidence was taken upon both sides, and several new elements of controversy were introduced.  The facts pertaining to them, so far as they are necessary to a proper understanding of the points here decided, are as follows :—

Moyses & Co. were in debt to appellants, Newman & Co., in a large sum, only partially secured, and, desiring to get further advances, agreed " to furnish them as additional collateral for $2000," notes to that amount secured by trust-deeds.  In execution of this agreement, they delivered to complainants, Newman & Co., notes aggregating $2175, among them being the note of one Satterwhite, for $250, secured by a trust-deed on crops to be grown.  This trust-deed, besides securing the note, was given to secure Moyses & Co. for advances to be made during the year to Satterwhite, and after the delivery of the note to complainants, Moyses & Co. advanced Satterwhite under the trust-deed, to the amount of over $1000.

The note for $250 was paid to complainants by the delivery of part of the mortgaged cotton, and afterwards Satterwhite turned over to Moyses & Co. other cotton embraced in the trust-deed, and, of this, nine bales were purchased by appellees from Moyses & Co. In addition to the nine bales thus purchased, defendants received $270, in settlement of the Satterwhite trust-deed, and in this proceeding complainants have sought to charge defendants with the said sum of $270, and the value of the nine bales of cotton, on the ground that they, complainants, were the owners of the trust-deed to Satterwhite, it having been deposited with them by Moyses & Co., as collateral, and the $2000 of indebtedness, to secure which the collaterals were given, not being paid.

In reference to the controversy over the three bales of cotton marked " Sam D. W.," it is not deemed necessary to an understand-

ing of the point passed upon by the court to further state the facts. The agreement of counsel referred to, is in the following language : " We hereby agree that the above and annexed statements truly exhibit the shipments by Sam Moyses & Co. to the Goldsmith Cotton & Provision Co., of cotton produced upon the Sligo plantation mentioned in above cause in the year 1887, and the date of the receipt and sale of the same by said company, and the net proceeds thereof, and that they may be filed in said cause as evidence accordingly."

The opinion, when taken in connection with the statement of facts contained in the former opinion, sufficiently states the facts in reference to the suing out by appellants of the writ of injunction and its service upon the Goldsmith Cotton & Provision Co., and the sale by it of the cotton.

Complainants have again appealed and assign for error the action of the court in refusing to charge defendants with the value of the nine bales of cotton and $270 received on account of Satterwhite, and also the action of the court in refusing to charge the Goldsmith Cotton & Provision Co. with the proceeds of the seven bales of cotton shown to have been in its possession on the day the writ of injunction was served upon it.

The defendant, the Goldsmith Cotton & Provision Co., has prosecuted a cross-appeal from that part of the final decree which charges it with the value of the three bales of cotton marked " Sam D. W.," and which complainants sought by defendants to show was a part of the cotton raised upon Sligo place, and shipped by Moyses & Co. to the said defendants.

*Phelps & Skinner,* for appellants and cross-appellees.

The appellants were not required to prove notice to the Goldsmith Cotton & Provision Co. as to any part of the cotton received by it, because the want of notice must be pleaded as a defense. *Stacey* v. *Barker,* 1 S. & M. Chy. 112 ; 3 Jones on Mort., § 1465 ; Pom. Eq. Jur., 784. There was no such plea. But if there had been, the evidence was sufficient to show that it had notice of the fact that Moyses & Co. were renting Sligo plantation, and knew

this as early as November 1. The amount of cotton received after that was ample to pay the balance of the rent note due to appellants after applying the products covered by the injunction.

In reference to the seven bales of cotton sold by the Goldsmith Cotton & Provision Co. on the day the injunction writ was served, we say the cotton was in its possession up to that day, and the writ being served that day, it devolves on the company to show that it was sold before service of the writ, as it was a matter peculiarly within its knowledge or means of ascertainment.

The defendants were properly charged with the three bales of cotton marked " Sam D. W." The marks of all the cotton which Moyses & Co. and the Goldsmith Cotton & Provision Co. acknowledge to have been received from the Sligo place are given in the agreed statement of the attorneys, together with the names of those who produced it, and they do not include these three bales, which it is not denied were raised on the Sligo place. Hence they were omitted by mistake, and their identity as Sligo cotton cannot be questioned and so thought the chancellor.

Appellants were entitled to recover of defendant the cotton and money received by them on account of Satterwhite's trust-deed. There is no dispute that the trust-deed was delivered to appellant as collateral to his debt, and there is no intimation in the correspondence any where that when the appellants received from the trust-deed the amount of $2000, the balance should be held for Moyses & Co. The very terms of the contract negative this, as Moyses & Co. agreed to ship to appellants every bale of cotton they might control, the proceeds to be applied to the payment of the debt due to appellants. Certainly under such facts it will not be implied that Moyses & Co. assigned only the note and reserved an interest in the trust-deed ; that would be in violation of their shipping agreement.

*Yerger & Percy*, for appellees and cross-appellants.

1. Moyses & Co. had a legal right to deposit the notes secured by the trust-deeds as collateral with appellants and sell the open accounts secured thereby to appellees, or to deposit the trust-deeds

to secure a debt to the extent of $2000 and sell the residue of their interest to appellees, and this is what was done. The facts show this, and the conduct of the parties was in keeping with this idea. There is nothing to show that Moyses & Co. intended to furnish collateral to an amount greater than that agreed upon and to an indefinite extent, dependent upon the amount of their advances. Appellants demanded collaterals such as they deemed sufficient, viz; notes secured by mortgages to the amount of $2000, and these were furnished. The accounts for advances remained subject to the disposal of Moyses & Co.

As to the seven bales of cotton, sold the day the injunction was served, we say, there was no seizure of the cotton, and mere service of the writ could not give the order the effect of tying up the sale of all the cotton—probably a thousand bales—in possession of the company. But the burden of showing service before the sale was on complainants, and they failed to meet it.

The agreement of counsel as to what cotton was raised on Sligo place and shipped to appellees must control. It was relied upon by appellees, and they took no testimony as to that. Appellant cannot use the agreement so long as it suits and abrogate it when an advantage is thereby obtained.

*Jayne & Watson,* for appellee, J. E. Negus.

The delivery by Moyses & Co. of the notes and trust-deeds to appellants was for the purpose of furnishing a specific amount of security. It is settled that a note secured by a trust-deed may be assigned to one person and an account secured by the same instrument assigned to another. The delivery of the notes and trust-deeds did not amount to an assignment of the accounts for future advances. There is no contract to this effect and no acts and circumstances attending the agreement or transaction would indicate such to be the intention. The notes were endorsed in blank, and the trust-deeds delivered merely to show that the notes were secured. There was no written assignment of the account, and a delivery of the trust-deed did not carry with it the evidence of indebtedness thereby secured. Colebrook on Collateral Securities, 184, 185.

Woods, C. J., delivered the opinion of the court.

The consideration and determination of the three substantial questions presented by the appeal and cross-appeal herein will finally settle the rights and liabilities of the several parties to this proceeding.

1. Did the court below err in refusing to charge the defendants with the proceeds of nine bales of cotton, and $270 in money, received from and on account of Satterwhite?

The evidence shows that Moyses, in order to secure certain advances from appellants, in the year 1887, agreed to and actually did deposit certain collaterals with appellants, among which was a note given by Satterwhite for $250, which note was endorsed by Moyses in blank at or before its deposit with appellants. It appears to us quite satisfactorily, from all the pleadings of appellants and the proofs submitted, that the deposit of Satterwhite's deed of trust with appellants, by which the $250 note was secured, as well as other sums to be advanced thereafter by Moyses to Satterwhite, was designed only as security for the payment by Moyses of the amount of the note. Collaterals to the amount of $2000 were to be deposited by Moyses with appellants, and were in fact so deposited; and this Satterwhite note was one of the collaterals going to make up the $2000. Satterwhite's deed of trust secured to appellants the sum named in the note, to wit, $250; and to that extent appellants were entitled to assert all the rights of the beneficiary in the deed of trust, but no further. Appellants cannot be heard to maintain that Satterwhite's note having been fully paid off, the security of his trust-deed shall be used to satisfy any part of the $2000, agreed to be secured by collaterals remaining unpaid, or any other balance due from Moyses to them.

The action of the chancery court in refusing to charge defendants below with Satterwhite's nine bales of cotton, and the $270 in money derived from Satterwhite, meets our approbation.

2. Was the court below correct in decreeing payment by the Goldsmith Cotton & Provision Company of the value of the three bales of cotton marked "Sam D. W.," amounting to $117?

The evidence raises a suspicion as to these three bales, but it is

not, in our opinion, sufficient to enable the court to say that the defendant should be charged with this sum, especially in view of the fact that, under the agreement signed by the respective solicitors, this cotton was not embraced in the agreed list, whereby defendants appear to have been absolved from the duty of making any proof on this point. While it is true that the evidence tends to show that this was Sligo cotton, and subject to complainant's demand, yet we are of opinion that, under the agreement just referred to, the decree in this particular was erroneous.

3. Was the refusal of the court below to charge the Goldsmith Cotton & Provision Company with $277.96, the proceeds of the seven bales of cotton sold by said company on January 5, 1887, erroneous? This cotton was in the hands of said company on December 29, when one of complainant's solicitors gave notice of complainant's lien upon all Sligo cotton. It remained in said company's possession until the 5th day of January following, on which day the writ of injunction sued out by complainant was executed on said company. Whether said seven bales of cotton were in the hands of the said company at the time of the execution of the injunction writ, appears to be left in doubt. Goldsmith, the president or manager of the company, testifies to his inability to say whether this cotton was sold before the injunction writ was executed or afterward, and there is no other evidence on this point. This branch of the case is readily resolvable by a well-known elementary rule of evidence, viz ; *the legal presumption of the continuance of a state of things, once established by proof, as at first, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question.* Manifestly, the rule may be easily pressed beyond reasonable limits, and the presumption of such continuance will depend largely upon the nature of the subject and circumstances to which it may be desired to be applied. In this case the seven bales of cotton were in this defendant's possession on December 29, when he had notice given of complainant's lien, and they so continued until January 5 following, on which day the injunction writ was served. In the absence of any evidence from the Goldsmith Company as to

when this cotton was sold—whether before or after service of the writ—(a most important fact peculiarly, not to say wholly, within said company's knowledge), this seems to us an appropriate subject, under appropriate circumstances, to which to apply the rule that the possession must be presumed to have continued up to the hour of the execution of the writ; and, applying this rule in this case, we conclude that the decree of the court below should have charged the Goldsmith Company with $277.96, the proceeds of said seven bales of cotton thus presumptively shown to have been in its possession at the time the writ was executed.

*Decree of the court below reversed, and final decree here, in accordance with this opinion.*